United States District Court
 District of Maryland


 Eric Grinder      63058-037
          Petitioner / defendant.


      against                          criminal case #
                                       CCB - 17 - 226

 United States of America,
           Respondent.




Memorandum of law in support of a motion pursuant to
28 U.S.C. § 2255 to vacate, set aside or correct a sentence
by a person in federal custody.



                              Eric Grinder   63058-037
                              Federal Correctional Complex
                              P. O. Box 1000
                              Petersburg, VA 23804

# Table of Contents

|  | page(s) |
|---|---|
| Table of Authorities | iv |
| | |
| Statement of Case | 1 |
| A. The allegations, investigation, and arrest of the defendent | 1 |
| B. Defense counsel's motion to suppress evidence | 2 |
| C. The defendent's trial and appeal | 3 |
| | |
| Summary of Argument | 5 |
| | |
| Argument | 6 |
| A. The defendent was denied a right to a speedy trial | 6 |
| B. Defense counsel fails to raise a voluntary intoxication defense | 7 |
| C. Violation of the Sixth Amendment's Compulsory process | 10 |
| D. A Confrontation Clause violation crippled the defense | 11 |
| E. A constructive amendment to the jury instructions altered the scope of the indictment | 14 |
| F. The indictment had multiplicity violations | 16 |
| G. The government does not prove the defendent knowingly possessed or accessed child pornography | 18 |

H. The government does not prove the intent
   portion of § 2251 (a) ............................................ 21
I. The government failed to prove the interstate or
   foreign commerce portion of § 2251 (a) ............ 23
J. There are many sentencing discrepencies
   in this case ......................................................... 26

Conclusion .................................................................... 31

# Table of Authorities

Cases                                                                    page(s)

Anderson v. United States,
          417 U.S. 211 (1974)                                               23

Ball v. United States,
          470 U.S. 856 (1985)                                               16

Barker v. Wingo,
          407 U.S. 514 (1972)                                               6,7

Claudio v. Scully,
          982 F.2d 798 (2nd Cir. 1992)                                      11

Crane v. Kentucky,
          476 U.S. 683 (1986)                                               11

Crawford v. Washington,
          541 U.S. 36 (2004)                                              12,14

Davis v. Alaska,
          415 U.S. 308 (1974)                                               13

Davis v. Washington,
          547 U.S. 813 (2006)                                               13

Delaware v. Van Arsdall,
          475 U.S. 673 (1986)                                               13

Gall v. United States,
          552 U.S. 38 (2007)                                              27,28

Gray v. Zook,
          806 F.3d 783 (4th Cir. 2015)                                      7,8

Holmes v. South Carolina,
          547 U.S. 319 (2006)                                               11

Kansas v. Cheever,
    571 U.S. 87 (2013)      9

Mchone v. Polk,
    392 F.3d 691 (4th Cir. 2004)      9

Meledez-Diaz v. Massachusetts,
    557 U.S. 305 (2009)      13,14

Ohio v. Clark,
    135 S. Ct. 2173 (2015)      12

Riley v. California,
    573 U.S. 373 (2014)      22

Shaw v. Collins,
    5 F.3d 128 (5th + 11th Cir. 1993)      13

Smith v. Robbins,
    528 U.S. 259 (2000)      4

Solo v. SD-3C LLC,
    751 F.3d 1081 (9th Cir. 2013)      24

Strickland v. Washington,
    466 U.S. 668 (1984)      passim

United States v. Abdul Karim Bangura,
    765 Fed. Appx. 928 (4th Cir. 2019)      29,30

United States v. Arbaugh,
    951 F.3d 167 (4th Cir. 2020)      28

United States v. Batato,
    833 F.3d 413 (4th Cir. 2016)      22

United States v. Battle,
$\qquad$ 695 Fed. Appx. 677 (4th Cir. 2017) $\qquad$ 29

United States v. Bennafield,
$\qquad$ 287 F.3d 320 (4th Cir. 2002) $\qquad$ 16

United States v. Blue,
$\qquad$ 877 F.3d 513 (4th Cir. 2013) $\qquad$ 27

United States v. Burns,
$\qquad$ 990 F.2d 1426 (4th Cir. 1992) $\qquad$ 17

United States v. Chiaradio,
$\qquad$ 684 F.3d 265 (1st Cir. 2012) $\qquad$ 17

United States v. Colton,
$\qquad$ 231 F.3d 890 (4th Cir. 2000) $\qquad$ 17

United States v. Cropp,
$\qquad$ 127 F.3d 354 (4th Cir. 1996) $\qquad$ 12

United States v. Darby,
$\qquad$ 37 F.3d 1059 (4th Cir. 1994) $\qquad$ 8

United States v. Dillingham,
$\qquad$ 320 F. Supp. 3d 809 (4th Cir. 2018) $\qquad$ 18, 19, 20

United States v. Falso,
$\qquad$ 544 F.3d 110 (2nd Cir. 2008) $\qquad$ 29, 30

United States v. Floresca,
$\qquad$ 38 F.3d 706 (4th Cir. 1994) $\qquad$ 15

United States v. Flyer,
$\qquad$ 633 F.3d 911 (9th Cir. 2010) $\qquad$ 20

United States v. Galecki,
        932 F.3d 176 (4th Cir. 2019)                              11

United States v. Gomez,
        763 F.3d 845 (7th Cir. 2014)                              19

United States v. Hall,
        858 F.3d 254 (4th Cir. 2014)                              21, 22

United States v. Haymond,
        139 S. Ct. 2369 (2019)                                    19, 20, 25

United States v. Jackson,
        554 Fed. Appx. 156 (4th Cir. 2013)                         9

United States v. Kuchinski,
        469 F.3d 853 (9th Cir. 2006)                              25

United States v. Lebowitz,
        676 F.3d 1000 (5th + 11th Cir. 2012)                      21

United States v. Lewis,
        958 F.3d 240 (4th Cir. 2020)                              30

United States v. McMiller,
        954 F.3d 670 (4th Cir. 2020)                              29

United States v. Miltier,
        882 F.3d 81 (4th Cir. 2018)                               15

United States v. Montes - Pineda,
        445 F.3d 375 (4th Cir. 2016)                              28

United States v. Morales,
        372 F.3d 6 (1st Cir. 2014)                                21

United States v. Myers,
        560 Fed. Appx. 184  (4ᵗʰ Cir. 2014)                    19, 25
United States v. Nacotee,
        159  F. 3d 1073   (7ᵗʰ Cir. 1998)                        8
United States v. Palomino - Coronado,
        805 F. 3d 127   (4ᵗʰ Cir. 2015)                    8, 21, 22, 23
United States v. Randall,
        171 F. 3d 195  (4ᵗʰ Cir. 1999)                        14, 15
United States v. Redd,
        161 F. 3d 793  (4ᵗʰ Cir. 1998)                        14
United States v. Ritchie,
        734 Fed. Appx. 876  (4ᵗʰ Cir. 2018)                  10
United States v. Ross,
        912 F. 3d 740   (4ᵗʰ Cir. 2019)                      28, 29
United States v. Stancil,
        145 F. Supp. 3d 565 (4ᵗʰ Cir. 2015)                  24
United States v. Valenzuela - Bernal,
        458 U.S. 858  (1982)                                 10
United States v. Warren,
        774 Fed. Appx. 778  (4ᵗʰ Cir. 2019)                 29
United States v. Wilford,
        689 Fed. Appx. 727  (4ᵗʰ Cir. 2017)                 15
United States v. Williams,
        403 F. 3d 1188   (10ᵗʰ Cir. 2005)                    9

United States v. Williams,
        468 Fed. Appx. 343   (4th Cir. 2012)                     11

United States v. Worrell,
        313 F.3d 867   (4th Cir. 2002)                           8

Washington v. Texas,
        388 U.S. 14   (1967)                                     13

Whalen v. United States,
        455 U.S. 684   (1980)                                    17

Wilkinson v. Polk,
        227 Fed. Appx. 210   (4th Cir. 2006)                     8

Wilson v. Greene,
        155 F.3d 396   (4th Cir. 1998)                           9

Statutes

18 U.S.C. § 1512 (b)(1)                                          2,12
18 U.S.C. § 2251 (a)                                             passim
18 U.S.C. § 2252 (a)(4)(B)                                       2,17,18,20
18 U.S.C. § 3161 (c)(1)                                          6
18 U.S.C. § 3161 (h)                                            6
18 U.S.C. § 3162 (a)(2)                                          6
18 U.S.C. § 3553 (a)                                            28,29
28 U.S.C. § 2255                                                13,26
Federal Rule of Criminal Procedure   12(b)(3)(B)(ii)            16
Federal Rule of Evidence   404(b)                               19,21

Merriam Webster's Collegiate Dictionary
     Eleventh Edition 2005                   9
United States Constitution Amendment VI     11

X

Statement of Case

A. The allegations, investigation, and arrest of the defendent

On the evening of November 27, 2016 Jane Doe, the defendents ten year old daughter told her mother, Alisha Grinder that the defendent had been sexually abusing her. The next day Alisha and Jane Doe left the residence and began to stay at Alisha's parent's house. During an interview with Carroll County Advocacy and Investigation Center on November 29, 2016 "Trooper Barry" and a "CPS worker" were informed by Jane Doe that the defendent had been sexually abusing her since she was eight years old and last occured the week prior. (Trial Transcripts 'TR' Vol. II, p. 8:7-8). Jane Doe made statements during an interview with law enforcement that the defendent touched her vagina, penetrated her vagina, and pushed her mouth to his penis. On November 29, 2016 law enforcement searched the defendent's home for evidence relating to Sex Abuse of a Minor, 2nd Degree Sexual Offense, 3rd Degree Sexual Offense, Rape 2nd Degree, and Sex Abuse of a Minor Continuing Course of Conduct. On December 2, 2016 Alisha informed police that Jane Doe told her the defendent used his cell phone to videotape her performing oral sex on the defendent and put it on T.V. On December 19, 2016 Maryland State Police gave Homeland Security Investigations (HSI) the defendent's seized cell phone and laptop for forensic analysis. The examination on February 16, 2017 led HSI to discover what they believed to be child pornography. HSI then submitted an application for a federal search warrant on March 17, 2017 specifically searching for child pornography. The defendent was then arrested on March 21, 2017 at which time HSI searched his home again. The defendent was charged federally on April 26, 2017. The

federal indictment charged three counts of production of child pornography, in violation of 18 U.S.C. § 2251 (a) and two counts of possession of child pornography, in violation of 18 U.S.C. § 2252 (a)(4)(B). On January 23, 2019 the grand jury issued a third superseeding indictment charging the defendent with five counts of production of child pornography, one count of attempted production of child pornography, in violation of 18 U.S.C. § 2251(a), two counts of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), and one count of witness tampering, in violation of 18 U.S.C. § 1512(b)(1).

## B. Defense Counsel's motion to suppress evidence

A motions hearing was held on January 26, 2018 where defense counsel attempted to suppress the evidence the government seized on the defendent's electronic devices. The government called the only witness during this hearing, Corporal Lare of the Carroll County Sheriff's office. Corporal Lare testified about his knowledge and expertise in child exploitation cases and how he "maintained [the] Cellebrite system" which police use "to read information on cell phones." (Motions 'MT', p. 6 : 11-12).

The defense counsel did not call any experts or witnesses despite the suppression of evidence being their all or nothing trial stradegy. During argument defense counsel showed how unprepared and deficient they actually were continuously referencing an out of context _Groh v Ramirez_. (MT, p. 44 : 2-4, p. 46 : 19-25, p. 47 : 1-11). On June 12, 2018 the court denied the motion that would suppress the evidence. The defense counsel then failed to file an interlocutory appeal, instead relying on a direct appeal after the trial.

2

This tied up the direct appeal with a suppression of evidence claim that could have been resolved before trial began.

C. The defendent's Trial and Appeal

The defense counsel was denied on the suppression of evidence motion, their next "stradegy" was to not defend the defendent. Defense counsel's goal was to rely on a lenient sentence for not contesting the government, however the defendent was still sentenced to the maximum on each count. Defense counsel admits to the jury they intended to violate the defendent's Sixth Amendment rights saying, "you won't be hearing very much more from me or Ms. Hopkins during the course of this trial. We are going to be sitting here alongside you, observing the government's presentation. You may hear us raise legal objections from time to time but, for the most part, we are going to be sitting and watching and listening just like you." (TR Vol I, p. 29:6-11). "The Sixth Amendment recognizes the right to the assistance of counsel" to aid the defendent and provide a fair trial but "a person who happens to be a lawyer is present at trial alongside the accused, however, is not enough to satisfy the constitutional command." Strickland v. Washington, 466 U.S. 668 at 685 (1984). Defense counsel "didn't cross-examine a single witness. We didn't put on any case", they just sat beside the defendent. (Sentencing "Sen", p. 30:3-5). On February 22, 2019 the defendent was found guilty on all counts. On May 24, 2019 the defendent was sentenced to thirty years in prison.

The appellate attorney also showed tunnel vison only focusing the appeal on the suppression of evidence the district court denied. This

3

memorandum will list many avenues the appellate attorney could have taken with a higher chance of success. The appellate counsel's lack of investigation into stronger claims hindered this case and "when ignored issues are clearly stronger than those presented, will the presumption of effective assisstance of counsel be over come." Smith v Robbins, 528 U.S. 259 at 288 (2000). The Fourth Circuit affirmed the district court's decision not to suppress the evidence on April 6, 2020. The petition for a writ of certiorari was denied on October 13, 2020.

## Summary of Argument

Through the investigation, trial, and appeal the defendent suffered a plethora of constitutional violations. The deficiency of the defense counsel is obvious, as they told the jury on the record, "during these last several days, I have been sitting here alongside you, watching and listening to the government's evidence." (TR Vol III, p. 63 : 3-5). The defense counsel admits to not putting on a case to defend the defendent during trial and "actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." Strickland, 466 U.S. at 692.

The most detrimental constitutional violation in this case was the ineffective (or non-exsistant) assisstance of counsel. This memorandum will highlight multiple constitutional violations the defendent suffered while his defense counsel watched. "The purpose of the effective assisstance guarantee of the Sixth Amendment ... is simply to ensure that criminal defendents receive a fair trial." Strickland, 466 U.S. at 689. This trial was anything but fair, the defense counsel allowed the government a "tarring and feathering [of] the defendent for sport." (Sentencing transcripts 'sen', p. 30:11). The defendent was sentenced to thirty years in prison and the government never "satisfied their burden of proof." (Sen, p. 30:6).

5

## Argument

### A. The defendent was denied a right to a speedy trial

Prior to the start of trial the defense counsel failed to file a motion to dismiss the indictment under 18 U.S.C. § 3162 (a)(2). The defense counsel acknowledged "this case has had a two year, more-than-two-year lifespan" but failed to file a violation of the Speedy Trial Act. (Sen., p. 29:18-19). Under 18 U.S.C. § 3161 (c)(1) when a defendent enters "a plea of not guilty... the trial of a defendent charged in an ... indictment with the commission of an offense shall commense within seventy days from the filing date of the ... indictment." The defendent was indicted on April 27, 2017 and did not go to trial until February 19, 2019, while § 3161 (h) does allow tolling the gaps exceed seventy days. The defendent's initial appearance was on May 4, 2017 a motion to suppress was filed seven months later on December 18, 2017. The court ruled on the motion on June 12, 2018 the next toll was five months later when the government issued a search warrant on November 7, 2018.

The Sixth Amendment of the constitution guarantees the defendent a right to speedy trial. The defense counsel failed to portray the defendent's wish to exercise this right. Before the trial began defense counsel never questioned the "length of delay, the reason for delay, the defendent's assertion of his right, and prejudice to the defendant." Backer v. Wingo, 407 U.S. 514 at 530 (1972). During sentencing defense counsel recognizes the unreasonable length of time this case had taken, despite the defendent's protests never asserts his rights. The government was aware of the defense's trial stradegy (or lack there of), there

6

wasn't sufficient reasoning for a two year investigation. The only logical conclusion was the government's desire to "hinder [the defendant's] ability to gather evidence, contact witnesses, or otherwise prepare his defense" by having him sitting in jail awaiting trial. Barker, 407 U.S. at 533. This delay prejudiced the defense because "witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." Barker, 407 U.S. at 532. The government showed this by having Alisha Grinder sitting in the courtroom throughout the trial allowing her "memory" to be influenced by trial testimony. The effects of not having a timely trial allowed the persuasion of law enforcement, the persuasion of family and friends, and the influence of testimony of trial witnesses easily swayed Alisha's testimony into exactly what the government wanted her to say. If the court finds the Barker factors are not met; "these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the constitution." Barker, 407 U.S. at 533.


B. Defense counsel fails to raise a voluntary intoxication defense


The defense counsel knew the defendant abused opiates, Ambien, and benzodiazepines yet "failed to put before the jury adequate evidence of his voluntary intoxication at the time of the crimes."

7

Gray v Zook, 806 F.3d 783 at 798 (4th Cir 2015). The government even acknowledged "the defendant was -- was a drug user during the relevant time period." (Sen, p. 11:1-2). The mental health problems of the defendant were known but not investigated and "proffessional decisions and informed legal choices can be made only after investigation of options." Strickland, 466 U.S. at 680.

Counts one through six of the indictment were specific intent crimes and defenses for "voluntary intoxication are viable only for specific intent crimes, because such defenses directly negate the required intent element of those crimes." United States v. Darby, 37 F.3d 1059 at 1064 (4th Cir 1994). The Fourth Circuit has held that production of child pornography is a specific intent crime: "§ 2251(a) contains a specific intent element." United States v. Palomino-Coronado, 805 F.3d 127 at 130 (4th Cir 2015). The "IDRA does not prohibit psychiatric evidence of a mental condition short of insanity when such evidence is offered purely to rebut the government's evidence of specific intent." United States v. Worrell, 313 F.3d 867 at 874 (4th Cir 2002). A toxicollogist's testimony would have proved the defendant's "mental faculties were so overcome by intoxicants that he was incapable of forming the intent requisite to the commission of the crime or that the intoxication was so extreme as to suspend entirely to the power of reason." United States v. Nacotee, 159 F.3d 1073 at 1076 (7th Cir 1998). While the defense counsel "had ample evidence to support a voluntary intoxication defense" they didn't pursue or investigate it. Wilkinson v. Polk, 227 Fed. Appx. 210 at 216 (4th Cir 2006). The combination of all the drugs the defendant abused made "his level of intoxication ... so severe that he lacked

the mens rea to commit an intentional crime." Wilson v. Greene, 155 F.3d 396 at 404 (4th Cir 1998). Defense counsel's failure to consult a psychologist negated any "mental status defenses [to] include those based on psychological expert evidence as to the defendant's mens rea, mental capacity to commit the crime, or ability to premeditate." Kansas v. Cheever, 571 U.S. 87 at 88 (2013). Whether the voluntary intoxication defense would have helped or hurt the defense will never be known since the defense counsel never investigated it but "the evidence would have been admissible to refute the specific intent" requirement of §2251(a). United States v. Jackson, 554 Fed. Appx. 156 at 160 (4th Cir 2013).

The prescription and non-prescription drugs the defendant was using caused daily inebriated states and "intoxication to the point of unconsciousness would make it impossible for... [the defendant] to act knowingly." United States v. Williams, 403 F.3d 1188 at 1197 (10th Cir 2005). The drug use led the defendant to black out states or states of unconsciousness. To be unconsious one is "not knowing or percieving: not aware, free from all self awareness." Merriam Webster's Collegiate Dictionary Eleventh Edition 2005. Defense counsel never investigates how the defendent was "so intoxicated that he could not form the necessary specific intent; thus expert testimony forming a scientific basis for this defense would have greatly supported his defense." Mchone v Polk, 392 F.3d 691 at 724 (4th Cir 2004). Defense counsel's failure to investigate a voluntary intoxication defense "had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentary picture." Strickland, 466 U.S. at 695-696.

9

## C. Violation of the Sixth Amendment's Compulsory process

The defense counsel only pursued a suppression of evidence tactic in this case yet offered no evidence to support their claim:

"The court: Any evidence on the defense side?

Ms. Oyer: No, your honor." (MT, p. 19: 21-22).

The government had Corporal Lare, testify that he had investigated "well over a hundred" child exploitation cases. (MT, p. 6:7). He also testified to have "specialized training with respect to digital evidence" as well as maintaining the "Cellebrite system." (MT, p. 6:11-15). There wasn't argument from the defense with all of Corporal Lare's knowledge and training why he handed the items seized to HSI for analysis. Defense counsel doesn't call witnesses or experts to back their claim that the court should suppress the evidence, the "Sixth Amendment [is] violated when witness testimony 'would have been both material and favorable to his defense." United States v. Ritchie, 734 Fed. Appx. 876 at 878-879 (4th Cir 2018), citing United States v. Valenzuela-Bernal, 458 U.S. 858 at 867 (1982). The government even points out the inadequacy of the defense during appeal showing the defense "chose not to make a record in the district court concerning what methodology the forensic analyst employed during the examination of the laptop to begin with, or precisely how, if at all, the examination could have been done differently." (Appellate reply brief 'RB', p. 38). The defense failing to call an expert on their behalf or to argue a different methodology caused the argument to be "unpreserved and therefore subject to the plain error standard" once it reached the Fourth Circuit. (RB, p. 35). While "the right to compulsory process is not absolute, and is

10

available only if the defendant can show that the evidence is relevant, material, and valid", defense counsel failed to seek expert or witness testimony. United States v. Williams, 468 Fed Appx. 343 at 345 (4th Cir 2012).

Despite the defendant's ex-wife being in the courtroom with a speech prepared for sentencing defense counsel never calls her. After sentencing when asked the counsel offers no explanation. Even during sentencing "a criminal defendant enjoy[s] the right ... to have compulsory process for obtaining witnesses in his favor." United States v. Galecki, 932 F.3d 176 at 182 (4th Cir 2019), citing United States Constitution Amendment VI. In this case the defense attorney's conduct [fell] outside the wide range of professionally competent assistance" and "there is a 'reasonable probability' that, but for the counsel's inadequate representation, the result of the proceeding would have been different." Claudio v. Scully, 982 F.2d 798 at 803 (2nd Cir. 1992), citing Strickland, 466 U.S. at 694.

"[W]hether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clause of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense." Holmes v. South Carolina, 547 U.S. 319 at 324 (2006), citing Crane v. Kentucky, 476 U.S. 683 at 690 (1986). In this case the defendant did not receive a complete defense, he could have represented himself and gotten the same result.

D. A Confrontation Clause violation crippled the defense

Count nine of the indictment charges the defendant with witness tampering

11

in violation of 18 U.S.C. § 1512 (b) (1). The claim was he attempted to "influence the testimony of Jane Doe in an official federal proceeding." (TR Vol I, p. 16:19-20). On November 27, 2016 Jane Doe told Alisha the defendent "had been sexually abusing her." (Appellate Opening Brief 'OB', p. 3). During a police interview Jane Doe claims the defendent "pushed her mouth to his penis and put it in her mouth." (OB, p.3). During trial law enforcement testified to the interview, "was the daughter interviewed? They were interviewed." (TR Vol II, p.8:5-6). Jane Doe was the sole accuser and witness in this case, it's "a defendent's right to cross-examine cooperating witnesses about sources of potential bias... guaranteed by the Confrontation Clause of the U.S. Constitution." United States v. Cropp, 127 F.3d 354 at 358 (4th Cir. 1996). Jane Doe went to police about the sexual abuse and gave a video statement to implicate the defendent in the abuse; "witnesses, under the Confrontation Clause, are those 'who bear testimony' and we defined 'testimony' as 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact." Ohio v. Clark, 135 S. Ct. 2173 at 2179 (2015), citing Crawford v. Washington, 541 U.S. 36 at 51 (2004). The defendent was denied the right to cross examine Jane Doe and "Jane Doe was a witness in the official proceedings." (TR Vol III, p. 35: 22-23).

    The day after Jane Doe made the allegations Alisha moved them both to her parents house. (TR Vol II, p.131:10-12). Jane Doe was not under duress during her taped interview and she was made aware of the consequences of her interview, her statements "are testimonial when the circumstances objectively indicate that there is no such on going emergency, that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal

prosecution." Davis v. Washington, 547 U.S. 813 at 816 (2006). Jane Doe was the only witness that could convict or free the defendant and "the main and essential purpose of confrontation is to secure for the opponet the opportunity of cross examination." Davis v. Alaska, 415 U.S. 308 at 315-316 (1974). She was the government's witness, therefore it was their burden to call her. In a similar case it was "held that requiring Shaw, rather than the state, to call Kinshasa to testify, the state court had violated Shaw's 6th amendment rights." Shaw v. Collins, 5 F.3d 128 at 132 (5th & 11th Cir. 1993).

The government denied the defendant his right to cross examine Jane Doe, "a complete denial of cross examination designed to explore the bias of a prosecution witness violates the confrontation clause of the Sixth Amendment, whether or not the denial influenced the outcome of the trial and whether or not the witness was important to the prosecution's case; that such denial where the cross examination is otherwise proper, should not be subject to harmless-error analysis and should lead to no less than a reversal of the conviction." Delaware v. Van Arsdall, 475 U.S. 673 at 675 (1986). Jane Doe is the only one that could testify the defendant recorded the images. She was the only witness and "federal courts focus on the paticular witness not the outcome of the entire trial." Shaw, 5 F.3d at 132. In this trial her "testimony would have been relevant and material." Washington v. Texas, 388 U.S. 14 at 16 (1967).

The defendant relied on his attorney "to bring to bear such skill and knowledge" to make "the trial a reliable adversarial testing process." Strickland, 466 U.S. at 688. Instead the attorney allowed a "denial or infringment of constitutional rights." (28 U.S.C. §2255(b)). The defendant was denied his Sixth Amendment right that "guaratees a defendant's right to confront those who bear testimony" against

13

him " causing prejudice to the whole trial. Meledez - Diaz v Massachusetts, 557 U.S. 305 at 309 (2009), citing Crawford, 541 U.S. at 51.

E. A constructive amendment to the jury instructions altered the scope of the indictment.

A defendent's Fifth Amendment rights are violated "when ... the [trial] court, through its instructions to the jury, ... broaden[ed] the bases for conviction beyond those charged in the indictment . United States v. Redd, 161 F.3d 793 at 795 (4th Cir 1998). In the beginning of the trial, judge Blake gave the jury instructions that to convict on 18 U.S.C.§ 2251(a) the government must prove "that this visual depiction, this image or picture, was produced using materials that had been mailed or transported in interstate or foreign commerce. (TR Vol I, p. 14:25, p.15:1-2). These instructions are accurate and in line with the verbage in § 2251(a). Judge Blake deviated from these instructions at the conclusion of trial, changing the wording of a federal statute, stating " the government alleges that the devices used to take the videos or images in question or the electronic device used to save the videos or images in question were manufactored in another state or foreign country. I instruct you that if you find that the devices were manufactored outside of the United States or the state of Maryland, that is sufficient to satisfy this element." (TR Vol III, p. 28: 7-13). The Fifth Amendment "guarantees that a criminal defendant will be tried only on charges in a grand jury indictment, only the grand jury may broaden or alter the charges." United States v. Randall, 171 F.3d 195 at 203 (4th Cir 1999). Perhaps judge Blake recognized the government didn't prove the devices used to produce the child

14

pornography were made outside of the U.S.. The instruction to the jury "the electronic devices used to save the videos or images" changed a production of child porography charge, carrying a minimum sentence of fifteen years, to a lesser possession of child pornography. The commerce prong in § 2251 (a) does not give any indication to devices saving child pornography just producing it. "A constructive amendment to an indictment occurs when ..., the court (usually through instructions to the jury), broadens the possible bases for conviction beyond those presented by the grand jury", which happens here broadening the requirements to convict under § 2251 (a). United States v. Floresca, 38 F.3d 706 at 710 (4th Cir 1994). The judge changed "the elements of the offense charged, such that the defendent is actually convicted of a crime other than that charged in the indictment." Randall, 171 F.3d at 203.

The main focus for the government in this trial was to convict the defendant of production of child pornography. "When a constructive amendment claim rests on erroneous jury instructions, a reviewing court must consider the totality of the circumstances including not only the instructions and the indictment but also the arguments of the parties and the evidence presented at trial to determine whether a jury could have reasonably interpreted the challenged instructions as a license to convict on an unindicted charge." United States v. Wilford, 689 Fed. Appx. 727 at 731 (4th Cir 2017). The jury instructions changed the requirements of a federal statute, this "variance ... violated a defendant's constitutional rights ... it prejudice[d] the defendent... by suprising him at trial and hindering the preparation of his defense, exposing him to the danger of a second prosecution for the same offense." United States v. Miltier, 882 F.3d 81 at 93 (4th Cir 2018).

Defense counsel was deficient by not raising objection to the errorneous

jury instructions. These instructions prejudiced the defense by allowing the defendent to get convicted of a charge with relaxed requirements.

F. The indictment had multiplicity violations

A multiplicity challenge is a pretrial motion in Federal Rules of Criminal Procedure 12(b)(3)(B)(ii). This case had only "one victim and one course of conduct" but the defendent was charged and convicted on six counts of production of child pornography, in violation of 18 U.S.C. § 2251(a), for one course of conduct. (sen, p. 44:1-2). The Supreme Court has held that "congress could not have intended to allow two convictions for the same conduct." Ball v. United States, 470 U.S. 856 at 861 (1985).

The government told the jury that count eight was a multiplicity violation during their closing argument, saying "the images here are all the images that he produced, other than count 1." (TR Vol III, p. 47:4-7). A "second conviction, even if it results in no greater sentence, is an impermissible punishment." Ball, 470 U.S. at 865. A multiplicity issue "has potential adverse collateral consequences that may not be ignored", the defendent was "subjected to an additional conviction, which itself can have collateral consequences", and he "was prejudiced by the additional $100 special assessment." United States v. Bennafield, 287 F.3d 320 at 324 (4th Cir 2002). Count eight convicted the defendent of possessing all of the images he produced in counts two through six, but "congress ordinarily does not intend to punish the same offense under two different statutes." Ball, 470 U.S. at 861.

The government was unable to prove how or when the images in count

seven got on his computer, also making counts seven and eight a multiplicity violation. (TR Vol II, p. 74: 22-25). Counts seven and eight charged the defendent with two counts of possession of child pornography, in violation of 18 U.S.C. § 2252 (a)(4)(B). "The plain language of section § 2252 (a)(4)(B) memorializes Congress's intent, ... that one who simutaniously possesses a multitude of forbidden images at one time and in a single place will have commited only a single offense." United States v. Chiaradio, 684 F.3d 265 at 274 (1st Cir 2012). The evidence in this case was all seized at the same time in the same place.

The defense counsel had to have the knowledge that "multiplicity involves charging a single offense in more than one count in an indictment." United States v. Colton, 231 F.3d 890 at 908 (4th Cir 2000). Defense counsel's failure to file a pretrial motion for a multiplicity violation shows "that counsel's performance was deficient" and the "deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. The defendent's constitutional rights were violated in this case, "a federal court it's own authority by imposing multiple punishments not authorized by Congress, it violates not only the specific guarantee against double jeopardy, but also the constitutional principal of separation of powers in a manner that trenches particularly harshly on individual liberty." Whalen v. United States, 455 U.S. 684 at 689 (1980). The court should vacate this sentence because "even where the defendent has suffered multiple convictions and faces multiple sentences, the appropriate remedy is to vacate all of them but one." United States v. Burns, 990 F.2d 1426 at 1438 (4th Cir 1992).

G. The government does not prove the defendent knowingly possessed or accessed child pornography

Counts seven and eight of the indictment charged the defendent with possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). Judge Blake instructed the jury the government must prove beyond a reasonable doubt "the defendent knowingly possessed or accessed a visual depiction, picture ... that the defendent knew about the sexually explicit nature of the material." (TR Vol I, p.16:2-4, 9-10). To prove the defendent's guilt the government prejudiced the jury by defaming the defendent's character when questioning the HSI analyst about the internet search history of the seized electronic devices. The Fourth Circuit has held internet searches do not prove a possession of child pornography charge; "on the one hand, there is substancial evidence of a defendent with a deep seated interest in child pornography, including a history of internet searches for it. On the other hand there is no evidence that connects any of that history to what he did to cause the known images to download on his computer." United States v. Dillingham, 320 F. Supp. 3d 809 at 822 (4th Cir 2018). The government offers no proof to the jury how the defendent downloaded the images to the devices seized and "there is no evidence connecting these searches to the known images being downloaded." Dillingham, 320 F. Supp. 3d at 816.

Count seven of the indictment the HSI analyst testified there wasn't any information "relating to the date, device used to take it, the date deleted, [or] anything like that." (TR Vol II, p. 74:23-24). The three photos in count seven were "found in the thumb cache" on the laptop. (TR Vol II, p. 74:3). There wasn't "expert testimony regarding the manner in which cell phones

18

[or computers] can 'cache' images without the user's knowledge." <u>United States v. Haymond</u>, 139 S. Ct. 2369 at 2374 (2019). The government never proves the defendant knew about or accessed the images in count seven. The government relied on the internet searches to prove the defendant knew he had "child pornography based on nothing more than evidence that he had a general disposition or propensity to search for and view child pornography. Under the specific facts and circumstances of this case, that evidence is not sufficiently probative of any permitted use under Rule 404 (b)(2) and should have been excluded, it had no connection to the crimes charged other than to show the defendant's predisposition and 'bad character' and 'that on a paticular occasion the [defendant] acted in accordance with [his] character." <u>Dillingham</u>, 320 F. Supp. 3d at 825. Rule "404 (b) is not just concerned with the ultimate conclusion, but the chain of reasoning that supports the non-propensity purpose for admitting the evidence." <u>United States v. Gomez</u>, 763 F.3d 845 at 856 (7th Cir 2014) en banc. The government never gives the chain of reasoning to connect any of the specific internet searches to any of the images in this case. The "courts have reasoned that the mere presence of illicit materials in a computer's temporary internet cache, standing alone, is insufficient to establish knowing reciept, given that the files could have been saved there without the user's knowledge." <u>United States v. Myers</u>, 560 Fed. Appx. 184 at 186 (4th Cir 2014).

During trial the government never mentions count eight of the indictment. It wasn't until closing arguments count eight was described to the jury as "all the images that he produced, or all of the other videos and images that he produced, other than count 1." (TR Vol III, p. 47:6-7). The government tells the jury the defendant knew of the child pornography in count eight, saying

"what's notable about all of these is that they're all deleted." (TR Vol III, p.47:14-15). Child pornography "located in 'unallocated space' containing deleted data [the] defendant could not access or download, and no evidence showed he knew those images were on his hard drive, an 18 U.S.C. § 2252(a)(4)(B) conviction was reversed; deletion of an image alone was insufficient to show possession on an alleged date ... deletion of an image alone does not support a conviction for knowing possession of child pornography on or about a certain date within the meaning of § 2252 (a)(4)(B)." United States v. Flyer, 633 F.3d 911 at 920 (9th Cir 2010). The only argument the defendant knowingly possessed the images in count eight is they were deleted.

The defense counsel in this case failed to show that "none of the recovered forensic data evidenced where the known images came from or any search that 'linked' to or otherwise evidenced the source of those known images or how they came to be on... [the] computer. Also, none of the recovered forensic data evidenced that ... [the defendant] had opened... or viewed any of the known images." Dillingham, 320 F. Supp. 3d at 814. The defendant did not receive a fair trial "in this case a congressional statute compelled a federal judge to send a man to prison for a minimum of five years without ... requiring the government to prove his guilt beyond a reasonable doubt." Haymond, 139 S.Ct. at 2373. In this trial "there is reasonable probability that, but for counsel's unproffesional errors, the result of the proceeding would have been different." Strickland, 466 U.S. 694.

H. The government does not prove the intent portion of § 2251 (a)

Counts one through six the defendant was charged with production of child pornography, in violation of 18 U.S.C. § 2251 (a). In order to be convicted of this crime it is the government's burden to prove the defendant engaged in sexually explicit conduct "for the purpose of producing or transmitting a visual depiction." (TR Vol I, p. 14: 23-24). During trial the government attempted to prove the defendant was in each image by clothing, tattoos, or other identifying marks. The government failed to prove the intent prong of the charges, the "use of his cell phone to take pictures is a far cry from the tripod and other recording equipment used to support purpose in other cases, see United States v. Lebowitz, 676 F.3d 1000 at 1013 (5ᵗʰ + 11ᵗʰ Cir. 2012), United States v. Morales, 372 F.3d 6 at 22 (1ˢᵗ Cir 2004)." Palomino-Coronado, 805 F.3d at 133. The government's claim is the defendant intended to create child pornography "because of his internet and his online activity." (TR Vol III, p. 43: 11-12). Prior internet searches do not satisfy the specific intent portion of § 2251 (a), similarily the Fourth Circuit has held that "because [a] defendant's prior possession conviction did not require a finding of specific intent, the only relevance that conviction could have to his intent to distribute marijuana on a later, unrelated occasion is that it tends to suggest that defendant is, in general, more likely to distribute drugs because he was involved in drugs in the past. This is precisely the propensity inference Rule 404 (b) prohibits." United States v. Hall, 858 F.3d 254 at 267 (4ᵗʰ Cir 2017). As found in Hall "a defendant's prior conviction for possession of a drug is not relevant to establish the defendant's intent to distribute a drug at a later time." Hall, 858 F.3d at

268. In this case the government similarily implied the defendent's prior internet search history was proof of his intent to create child pornography. The government failed to prove the defendant had "the intent to accomplish the precise criminal act that one is later charged with. United States v. Batato, 833 F.3d 413 at 430 (4th Cir 2016).

Someone having pictures on a cell phone does not mean that person acted with the specific intent of creating a picture, "nearly three-quarters of smart phone users report being within five feet of their phones most of the time, with 12% admitting that they even use their phones in the shower." Riley v. California, 573 U.S. 373 at 395 (2014). The decision in Riley was held in 2014 and technology has continued to evolve with people relying on cell phones even more now. In 2014 "more than 90% of american adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives - from the mundane to the intimate." Riley, 573 U.S. at 395. Jane Doe is the defendent's adopted daughter, there were many photos of her that were "normal clothed images." (TR Vol II, p. 82:13-14). The defendant and Jane Doe lived together, it is a safe assumption that the defendent's cell phone was with him and Jane Doe most of the time. During trial there wasn't any "testimony that the defendent gave any instruction or direction to the minor as part of their sexual encounter that would indicate purpose. Palomino-Coronado, 805 F.3d at 132. The government claimed Jane Doe was drugged therefore she could not receive instruction but judge Blake ruled there wasn't "enough reliable evidence in front of me to determine that on any of these specific occasions in counts 1 through 6 she actually had been drugged." (Sen, p. 13:1-4). In this case "the evidence produced at trial for violation

22

of 18 U.S.C. § 2251 did not support the conclusion that the defendant engaged in sexually activity with a minor for the purpose of producing a picture." <u>Palomino - Coronado</u>, 805 F.3d at 132.

The defense counsel knew "the prosecution must show that the offender acted with a specific intent", yet failed to compel the government to prove this. <u>Anderson v. United States</u>, 417 U.S. 211 at 223 (1974). The defendant relied on "counsel's skill and knowledge" to receive a fair trial. <u>Strickland</u>, 466 U.S. at 685. Defense counsel in this case was deficient by not making the government prove the intent portion of §2251(a). The lack of argument from defense counsel prejudiced the trial, "there is reasonable probability that, but for the counsel's unproffessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. The defense counsel did not make the government prove the defendant intended to create child pornography, as a result the defendant was convicted of crimes the government did not prove.


I. The government failed to prove the interstate or foreign commerce portion of §2251(a).


The federal courts have jurisdiction in this case because of the interstate and foreign commerce violations of the federal statutes. Counts one, three, four, five, and six of the indictment the government needed to prove "that this visual depiction, this image or picture, was produced using materials that had been mailed or transported in interstate or foreign commerce." (TR Vol I, p. 14:25, p. 15:1-2).

The HSI analyst could not testify to any device that produced the images

23

in count one or when they were "made or produced." (TR Vol II, p. 87: 9-16). The defendent was still convicted of this count despite the government not proving the images were "produced using materials that have been mailed, shipped, or transported in or affecting interstate commerce or foreign commerce." 18 U.S.C. § 2251(a). There was no proven commerce clause violation for count one so the court was without jurisdiction to impose a punishment.

The images in counts two, three, and four come from the secure digital 'SD' card found inside the cell phone. An SD card cannot produce images or videos, "SD cards are 'secure digital' memory cards, a family of very popular flash memory cards used for electronic storage in portable computer devices." United States v. Stancil, 145 F. Supp. 3d 565 at FN1 (4th Cir 2015). SD cards are interchangable between devices that is why they are so popular, when getting a new cell phone people typically transfer the SD card from the old phone to the new one in order to keep photos, documents, or other important information. There was no proof the SD card in this even began it's life in a cell phone, SD cards "are widely used in consumer electronics such as cellular phones and digital cameras." Solo v. SD-3C LLC, 751 F.3d 1081 at 1084 (9th Cir 2013). The government's only argument that the seized phone took an image was in cont four where "it appears to be a cell phone case", but like any other cell phone accessory cases too are interchangable between devices. (TR Vol II, p. 101: 24-25). An SD card cannot take pictures, the government failed to prove the seized cell phone took the images in counts two through four, and without that proof there was no commerce clause violation.

The images related to counts five and six of the indictment were found in the Android cache folder of the cell phone. The cache of a cell phone "creates a copy of your original image, reduces it in size and puts it into...

a cache folder." (TR Vol II, p. 35:13-15). The Supreme Court has recognized that "cell phones can 'cache' images without the user's knowledge." Haymond, 139 S. Ct. at 2374. The government never proves how the images got into the Android cache folder and "the mere presence of illicit materials in a computer's temporary internet cache, could have been saved there without the user's knowledge." United States v. Myers, 560 Fed. Appx. 184 at 186 (4th Cir 2014). Photos in a cache folder does not prove that device took the photo, every website, picture sent to you, or even emails cache photos. The courts do not even convict on the lesser possession of child pornography for images located in a cache folder because "where a defendant lacks knowledge about the cache files and concomitantly lacks access to and control over those files it is not proper to charge him with possession" of child pornography. United States v. Kuchinski, 469 F.3d 853 at 863 (9th Cir 2006). Without the proof the images in counts five and six were actually produced by the seized cell phone the government did not prove a commerce clause violation.

　　The defense counsel failed to make the government meet it's "burden of proof." (Sen, p. 30:6). These errors "were so serious as to deprive the defendent of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. The government doesn't prove that any of the images in this case were "produced using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce." §2251(a). The government doesn't show any of the seized devices took the images in this case. The government's savior in this case was the fatal variance mentioned in section E of this memorandum instructing the jury that "the electronic device used to save the videos or images ... satisfy this element." (TR Vol III, p. 28:8-9, 13). With the defense counsel failing to argue

that the government had not proven the interstate and foreign commerce clause of § 2251 (a) the defendent had a sentencing guideline score of 48. The defendent should have received an aquittal on counts one through six since the government did not satisfy it's burden of proof, giving him a sentencing guideline score of 24.

The government did not prove the interstate or foreign commerce prong of 18 U.S.C. § 2251 (a), therefore this "court was without jurisdiction to impose such sentence" and should "vacate, set aside, or correct the sentence." 28 U.S.C. § 2255 (a).

J.  There are many sentencing discrepencies in this case.

The mental health and drug abuse problems the defendent has were not argued by the defense counsel during sentencing. When the defendent was "the age of 29 he started abusing prescription opiates and benzodiazepines such as Oxycontin and synthetic klonopin", this argument could have resulted in a reduction in sentence. (Presentencing Report 'PSR', p. 18:132). Under 5H1.3 "a downward departure may be appropriate to accomplish a specific treatment purpose", prison is not a treatment facility. The defendent has "never had the benefit of substance abuse treatment" and the Bureau of Prisons does not even offer the defendent's previously prescribed mental health medication. (PSR, p. 18:133).

Defense counsel knew "the defendent was initially diagnosed with depression and anxiety, ... he was prescribed Zoloft and Xanax, ... in April 2010 he attempted suicide by overdosing." (PSR, p. 18:130). Once released from the mental health treatment facility the defendent was diagnosed to be suffering from bipolar

26

disorder. Defense counsel failed to argue a downward departure under 52K.13 or consult any experts. This failure resulted in a prison sentence greater than necessary.

During argument at the sentencing hearing defense counsel claims the defendant "had a good life before this. He had a good career. He had a nice home. He had a great family life." (Sen, p. 34:23-25). Despite making this argument counsel never requests a downward variance under 5K2.20. This downward departure could have saved years of the defendant's life, it was documented the defendant struggled with mental health and emotional conditions, his employment record was impeccable, he had a long history of good works, he had no motivation for committing the offense, and he made every effort he could to mitigate the effects of the offense but the government denied them. With all of the requirements of 5K2.20 satisfied defense counsel still failed to argue a downward departure.

Since the beginning of the investigation the defendant has tried to get the defense counsel to acknowledge the exsistance that the government did not and would not possess. The defendant even tried to tell agent Federico of HSI while counsel was not present, he refused to listen and insisted everything go through counsel. The defense counsel could have requested a downward variance under 5K2.16, "where a defendant, motivated by remorse, discloses an offense that otherwise would have remained undiscovered." Since the defense counsel never mentions this variance the undiscovered evidence remains undiscovered.

The "district courts are obligated to explain their sentences, whether those sentences are within or beyond the guidelines range ... Any other outcome would erode the standard set by the Supreme Court in Rita and Gall." United States v. Blue, 877 F.3d 513 at 521 (4th Cir 2017). During sentencing

the court failed to personalize the sentence, only offering "a sentence that is enough certainly to deter Mr. Grinder, sufficient to protect the victim and the public, and sufficient to recognize how serious an offense this is." (Sen, p. 44:16-19). The "district court's explanation should provide some indication (1) that the court considered the § 3553(a) factors with respect to the paticular defendent, and (2) that it has also considered the potentially meritorious arguments raised by both parties about sentencing." United States v. Montes - Pineda, 455 F.3d 375 at 380 (4th Cir 2006). The court did not address the § 3553(a) arguments from the defense counsel or the prosecution, only addressing the sentencing guidelines. The "district court did not address [the defendent's] history of gainful employment, ['a good heart, has a generous spirit, and is a great dad to his sons. He had a nice home. He had a great family life.'] ... as mitigating factors when calculating his term of confinement. United States v. Ross, 912 F.3d 740 at 745 (4th Cir 2019), citing (Sen, p. 34:5-6). The sentencing court "must adequately explain the chosen sentence to allow for meaningful appellate review and promote the perception of fair sentencing", in this case however the court did not address the § 3553(a) factors relying only on the sentencing guidelines. Gall v. United States, 552 U.S. 38 at 50 (2007). Here, "it is undisputable that the sentencing court provided an insufficient explanation of it's sentence and did not provide an individualized assessment of important mitigation evidence". Ross, 912 F.3d at 744.

   During the sentencing hearing, "just as with other parts of a sentence, the district court must adequately explain any special conditions of supervised release." United States v. Arbaugh, 951 F.3d 167 at 178 (4th Cir 2020). Without argument or taking in to account any factors, a sentence of lifetime

<u>28</u>

supervised release was imposed. Judge Blake issued the supervised release as if everyone had previously agreed on it; "there obviously is going to be a period of a lifetime of supervised release following whatever the sentence is." (Sen, p. 37:17-19). Without additional explanation, the court also imposed a lifetime term of supervised release. United States v. McMiller, 954 F.3d 670 at 673 (4th Cir 2020). "It is procedurally unreasonable to impose special conditions for the remainder of [the defendent's] life without providing an explanation or rationale for their justification." Ross, 912 F.3d at 746. Even before the prison sentence was imposed the defendent was already sentenced to a lifetime of supervised release, the only special conditions discussed are "not having direct contact with any child under 18 without the permission of the probation officer" with the change "except your own children." (Sen, p. 39:20-22, p. 40:1-2). "The district court did not explain why [the defendent] was given any of the special conditions for life." Ross, 912 F.3d at 746.

The sentencing court did not address § 3553 (a)(3) factors for the types of sentences available, instead sentencing the defendent in line with human sex traffickers. In United States v. Falso, 544 F.3d 110 (2nd Cir 2008) the defendent was sentenced to thirty years in prison for 242 counts of sex offenses, including eight production of child pornography charges. In United States v Warren, 774 Fed. Appx. 778 (4th Cir 2019) the defendent was sentenced to thirty years in prison for seven counts of sex trafficking a child. These are the people the defendent was sentenced in line with, yet in United States v. Battle, 695 Fed. Appx. 677 (4th Cir 2017) the defendent was sentenced to 300 months in prison for four counts of production of child pornography as well as distrubution of child pornography. In United States v. Abdul Karim Bangura, 765 Fed. Appx.

29

928 (4ᵗʰ Cir 2019) the defendent was sentenced to 186 months in **prison**, for sex trafficking a 15 year old girl. A man selling a 15 year old girl for sex is only sentenced to 13 years in prison. In <u>Falso</u> the defendent had a previous sex abuse conviction, yet his 242 count indictment led to the same sentence the defendent in this case received with no criminal history.

In this case " the district court was required to give 'specific attention' to [the defendent's] nonfrivolous arguments, and the court's failure to do so resulted in a procedurally unreasonable sentence." <u>United States v. Lewis</u>, 958 F.3d 240 at 245 (4ᵗʰ Cir 2020).

## Conclusion

For all the reasons stated herein and in the accompanying petition, the requested relief should be granted: this court issue a writ of habeas corpus directing that the government retry the defendent in this case or release him from custody. In the alternate the court should order an evidentary hearing

Respectfully,

Eric Grinder          63058-037
                      pro se
Federal Correctional Complex
P.O. Box 1000
Petersburg, VA 23804